UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| JENNI J. WOOD )<br>(Social Security No. XXX-XX-3170), )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, COMMISSIONER )<br>OF SOCIAL SECURITY,[1] )<br>)<br>Defendant. ) | 3:06-cv-59-RLY-WGH |

**MEMORANDUM DECISION AND ORDER**

**I.** **Statement of the Case**

Plaintiff, Jenni J. Wood, seeks judicial review of the final decision of the agency, which found her not disabled and, therefore, not entitled to Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act"). 42 U.S.C. §§ 416(i), 423(d); 20 C.F.R. § 404.1520(f). The Court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

Plaintiff applied for DIB on June 3, 2003, alleging disability since June 9, 2002. (R. 59-61). The agency denied Plaintiff's application both initially and on reconsideration. (R. 35-40A, 42-44). Plaintiff appeared and testified at a hearing before an Administrative Law

---

[1]On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Michael J. Astrue, in his official capacity only, is substituted as the defendant in this action.

Judge ("ALJ") on January 10, 2005. (R. 307-48). Plaintiff was represented at the hearing by her attorney, J. Michael Woods. (R. 307). Also testifying was a vocational expert ("VE"). The ALJ issued a decision on April 18, 2005, finding that Plaintiff was not disabled because she retained the residual functional capacity ("RFC") to perform a significant number of jobs in the regional economy. (R. 19-32). The Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. (R. 4-7). 20 C.F.R. §§ 404.955(a), 404.981. Plaintiff then filed her Complaint on March 31, 2006, seeking judicial review of the ALJ's decision.

## II.     Medical Evidence

Plaintiff suffers from a long history of psychiatric problems. Plaintiff's father died in September of 2001, and she had been feeling extraordinarily guilty because she was not able to be by his bedside when he died suddenly. (R. 129). In addition, she was trying to take care of her mother who was suffering from several very serious medical problems and was concerned that her mother was dying. She was admitted to Deaconess Cross Pointe Center on June 12, 2002.

J. Mark Boling, M.D., the physician that conducted her initial psychiatric evaluation, stated: "The patient is admitted because of being gravely disabled and having suicidal ideation." (R. 129). Her symptoms included depressed mood, difficulty sleeping, poor energy level, increased anhedonia, social withdrawal, irritability, crying spells, poor concentration and suicidal ideation. (R. 129).

She was released from Deaconess on June 18, 2002, after spending six days in the hospital. She reported thinking of taking a gun and going out into the woods and shooting herself in the head or taking an overdose of pills. In addition to these problems with depression, Plaintiff was having anxiety attacks. When she was admitted to the hospital, the doctors found that she had a global assessment of functioning ("GAF") score of 35. (R. 127).[2] Plaintiff was released from Deaconess on June 18, 2002, with a GAF score of 55.[3]

The medical records from Ronald Schwartz, D.O., Plaintiff's treating psychiatrist, provide detailed information concerning Plaintiff's restrictions. (R. 164). Dr. Schwartz evaluated Plaintiff on February 24, 2003, and found a GAF score of 55. (R. 168). Additionally, the limitations Dr. Schwartz notes on June 12, 2003 (R. 157) are fairly typical of the limitations throughout her records. For example, on that date Dr. Schwartz noted that she was dysphoric, sad, anxious, her affect was appropriate/variable, her insight was variable, and her judgment was variable. He further noted that she is seeing shadows that are apparently hallucinations, and she is paranoid. Dr. Schwartz notes substantially the same limitations at numerous places throughout his records. (*See* R. 159, 161, 163, 166, 168, 208, 210, 212, 214, 216, 219, 222, 225).

On August 19, 2003, D. Shaner Gable, Ph.D., HSPP, examined Plaintiff at the request of the Indiana Disability Determination Bureau to assist in determining eligibility for Social

---

[2] A GAF score of 35 would indicate some impairment in reality testing or communication or a major impairment in several areas such as work or school, family relations, judgment and thinking or mood. *American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders*, 32 (4th ed. 1994).

[3] A GAF score of 55 is halfway between serious symptoms (GAF score of 50) and moderate symptoms (GAF score of 60).

Security disability benefits. Dr. Gable found that Plaintiff had a GAF score of 50. In fact, Dr. Gable found that Plaintiff was so limited that she might need help managing any funds awarded to her. (R. 176).

On December 18, 2003, Plaintiff was admitted to Deaconess Hospital for suicidal ideation with a plan to shoot herself. Dr. Boling indicated that Plaintiff suffered from "depression not otherwise specified," "borderline personality disorder," and "severe stress in the financial arena," and assigned a GAF score of 25 upon admission and 45 upon release. (R. 275-77).

Plaintiff has also received extensive treatment from the Southwestern Indiana Mental Health Center. These records essentially corroborate the findings of Dr. Schwartz. For example, on April 13, 2004, staff psychiatrist, John Wuertz, M.D., conducted a one-hour psychiatric evaluation. It was his opinion that Plaintiff suffered from major depressive disorder with psychotic features, panic disorder with agoraphobia, post traumatic stress disorder, sleep apnea, and possible narcolepsy, and he gave her a GAF score of 35. (R. 270-71). Dr. Wuertz had assessed Plaintiff's condition one month earlier and assigned a GAF score of 55. (R. 272).

Progress notes from sessions with Dr. Wuertz from July 16, 2004, to November 17, 2004, indicate some instances of suicidal thoughts, continual hearing of voices and seeing shadows, and panic and anxiety. (R. 298-99).

Plaintiff also suffers from several physical problems that limit her ability to work. In the decision, the ALJ found that she suffered from right knee arthritis, right shoulder arthritis, a hallux abducto valgus deformity of the right foot, urge incontinence despite placement of a

pubovaginal sling, and asthma. (R. 30).

On August 9, 2003, Bryan Atwood, M.D., conducted an examination of Plaintiff. After an extensive examination, Dr. Atwood noted that, in addition to her mental problems, she suffered from right knee arthritis, right shoulder arthritis, asthma and sleep apnea. Dr. Atwood stated: "She may have difficulty with prolonged lifting and handling of objects secondary to her shoulder condition and her knee condition. She would be able to perform a sedentary-type of occupation without a problem." (R. 171).

On June 3, 2004, Plaintiff underwent a surgical procedure to have a pubovaginal sling inserted as a result of problems she was having with Type I and Type III incontinence. (R. 242-55).

**III.    Standard of Review**

An ALJ's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); see also *Perkins v. Chater,* 107 F.3d 1290, 1296 (7th Cir. 1997). This standard of review recognizes that it is the Commissioner's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide questions of credibility. *Richardson,* 402 U.S. at 399-400. Accordingly, this Court may not re-evaluate the facts, weigh the evidence anew, or substitute its judgment for that of the Commissioner. *See Butera v. Apfel,* 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, even if reasonable minds could disagree about whether or not an individual was "disabled," the Court must still affirm the ALJ's decision denying benefits. *Schmidt v. Apfel,* 201 F.3d 970, 972 (7th Cir. 2000).

**IV.     Standard for Disability**

In order to qualify for disability benefits under the Act, Plaintiff must establish that she suffers from a "disability" as defined by the Act. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations set out a sequential five step test the ALJ is to perform in order to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920. The ALJ must consider whether the claimant:  (1) is presently employed; (2) has a severe impairment or combination of impairments; (3) has an impairment that meets or equals an impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) is unable to perform her past relevant work; and (5) is unable to perform any other work existing in significant numbers in the national economy. *Id.* The burden of proof is on Plaintiff during steps one through four, and only after Plaintiff has reached step five does the burden shift to the Commissioner. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000).

**V.     The ALJ's Decision**

The ALJ, George A. Mills III, concluded that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. 30). The ALJ continued by finding that, in accordance with 20 C.F.R. § 416.920(b), Plaintiff had twelve impairments that are classified as severe:  (1) recurrent, severe major depression; (2) post-traumatic stress disorder; (3) dysthymia; (4) an unspecified personality disorder; (5) schizophrenia; (6) bipolar disorder; (7)

sleep apnea; (8) right knee arthritis; (9) right shoulder arthritis; (10) a hallux abducto valgus deformity of the right foot; (11) urge incontinence despite placement of a pubovaginal sling; and (12) asthma. (R. 30). The ALJ concluded that none of these impairments met or were substantially similar to any of the impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 30). Additionally, the ALJ opined that Plaintiff's allegations regarding the extent of her limitations were not fully credible. (R. 31). Consequently, the ALJ concluded that Plaintiff retained the RFC to perform medium work that involved lifting 25 pounds for two-thirds of an eight hour work day and involved simple routine tasks on a sustained basis. (R. 31). The ALJ determined that, because of these limitations, Plaintiff could not perform her past work. (R. 31). The ALJ went on to conclude that Plaintiff was able to perform some work; Plaintiff was a "younger individual" with more than a high school education and no transferable skills. Based on her limitations, she retained the RFC to perform a limited range of medium work existing in substantial numbers in the regional economy. (R. 31). The ALJ concluded by finding that Plaintiff was not under a disability.[4] (R. 31).

## VI.     Issues

After reviewing the administrative record and the issues presented by Plaintiff in this case, the Court concludes that two issues warrant a remand. The issues are as follows:

1. Is the ALJ's RFC finding supported by substantial evidence?

---

[4]At page 6 of Defendant's Brief, the Commissioner argued that Plaintiff must prove that she was under a disability as of June 30, 2003, her last date insured. However, the ALJ found that Plaintiff is insured for disability benefits through December 31, 2007. (R. 20, 30). This is, in fact, supported by Plaintiff's earnings records. (R. 62). Therefore, the issue before the Court is whether Plaintiff was disabled as of the date of the ALJ's decision on April 18, 2005.

    2.  Did the ALJ incorrectly apply Listing 12.04?

**Issue 1:  Is the ALJ's RFC finding supported by substantial evidence?**

Despite the fact that the ALJ concluded that Plaintiff suffered from 12 severe impairments, the ALJ found that Plaintiff retained the RFC to perform medium work with the only limitation being that Plaintiff could only perform simple routine tasks and could only meet the lifting requirements for two-thirds of an eight hour day.  The ALJ assessment of Plaintiff's RFC is simply not supported by substantial evidence.  The ALJ is required to "build an accurate and logical bridge from the evidence to [the ALJ's] conclusion," so that the Court can trace the path of the ALJ's reasoning.  *Scott v. Barnhart,* 297 F.3d 589, 595 (7th Cir. 2002).  And, in this instance the Court cannot trace the path of ALJ Mills' reasoning.

The ALJ evaluated Plaintiff's physical impairments by discussing the consultative examiner, Dr. Atwood's, report of a one-time visit.  (R. 169-71).  The ALJ analyzes Dr. Atwood's report as "vague as to what the plaintiff can or cannot do" (R. 27) – a characterization with which the Court can concur.  The ALJ does explicitly describe that he does not give the report controlling weight and considers some of the opinions to be "vocational opinions" for which the doctor has no expertise.  (R. 27).

The problem with the analysis, however, is that without Dr. Atwood's report being given controlling weight, the ALJ does not recite to any other medical evidence of record that establishes what physical capabilities Plaintiff does possess.  If the ALJ had concluded that Plaintiff could only perform some limited range of sedentary work, the omission of the other medical evidence addressing this part of the RFC might not have been critical to the Court's ability to trace the path of reasoning.  However, the ALJ somehow concluded that Plaintiff

-8-

could perform medium work.

In order to perform medium work, an individual must lift no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 404.1567. While the ALJ provided a slight reduction in Plaintiff's RFC by finding that she could only lift these weights for two-thirds of an eight-hour day, this RFC is still not supported by the medical evidence. Dr. Atwood's vague opinion concluded that Plaintiff might have difficulty lifting or carrying "objects" for a prolonged period of time. This was at a stage in 2003 when Plaintiff weighed 273 pounds. However, by the time of her administrative hearing, Plaintiff was up to 340 pounds which certainly could have had an even greater impact on Plaintiff's ability to carry 25 pounds for a prolonged period of time. The ALJ also clearly found that Plaintiff suffered from asthma, which he found to be a severe impairment. Yet, despite this finding, the ALJ did not reduce Plaintiff's RFC. Plaintiff's asthma and severe obesity should have led to some environmental restrictions (such as height restrictions or dust and temperature restrictions) on Plaintiff's RFC. There is also absolutely no other medical evidence in the way of objective medical tests to support the ALJ's conclusion that Plaintiff could lift 25 pounds for a prolonged period of time given Plaintiff's sleep apnea (which would reduce her energy level), her asthma (which would reduce her endurance), and her severe obesity (which would have a significant effect on her weight-bearing joints). Hence, the ALJ's decision must be remanded.

**Issue 2: Did the ALJ incorrectly apply Listing 12.04?**

In addition to the problems with the ALJ's RFC assessment, the Court does not find substantial evidence to support the ALJ's determination that none of Plaintiff's impairments

-9-

meet or equal any of the listings. Specifically, the Court notes that Plaintiff's mental condition appears to meet, or at least substantially equal, Listing 12.04 for Affective Disorders. Listing 12.04 explains that an individual suffers from an affective disorder if the following criteria are met:

> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
> A.  Medically documented persistence, either continuous or intermittent, of one of the following:
> 1.  Depressive syndrome characterized by at least four of the following:
> a.  Anhedonia or pervasive loss of interest in almost all activities; or
> b.  Appetite disturbance with change in weight; or
> c.  Sleep disturbance; or
> d.  Psychomotor agitation or retardation; or
> e.  Decreased energy; or
> f.  Feelings of guilt or worthlessness; or
> g.  Difficulty concentrating or thinking; or
> h.  Thoughts of suicide; or
> i.  Hallucinations, delusions or paranoid thinking; or
> 2.  Manic syndrome characterized by at least three of the following:
> a.  Hyperactivity; or
> b.  Pressure of speech; or
> c.  Flight of ideas; or
> d.  Inflated self-esteem; or
> e.  Decreased need for sleep; or
> f.  Easy distractability; or
> g.  Involvement in activities that have a high probability of painful consequences which are not recognized; or
> h.  Hallucinations, delusions or paranoid thinking; or
> 3.  Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);
> AND
> B.  Resulting in at least two of the following:
> 1.  Marked restriction of activities of daily living; or
> 2.  Marked difficulties in maintaining social functioning; or
> 3.  Marked difficulties in maintaining concentration, persistence, or pace; or
> 4.  Repeated episodes of decompensation, each of extended duration;
> OR

        C.  Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
            1.  Repeated episodes of decompensation, each of extended duration; or
            2.  A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
            3.  Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 CFR. Part 404, Subpart P, Appendix 1.

      The medical evidence appears to reveal that Plaintiff met Part A of the listing. Plaintiff's medical records clearly indicate that she had, at the very least, an intermittent persistence of depressive syndrome characterized by (1) pervasive loss of interest in almost all activities, (2) sleep disturbance (R. 201, 226), (3) decreased energy, (4) feelings of guilt or worthlessness (R. 269, 289, 299), (5) difficulty concentrating or thinking (R. 199, 269), (6) thoughts of suicide (R. 130, 177, 205, 289, 299), and (7) hallucinations, delusions or paranoid thinking (R. 157, 159, 161, 269, 298, 299).  And, the listing only requires findings of intermittent problems in four of these areas.

      The medical evidence also appears to have met Part B of the criteria.  There are medical records from June 2002 (R. 129), August 2003 (R. 176), December 2003 (R. 275-77), and July to November 2004 (R. 298-99), that indicate GAF scores below 50 and behavior that would reveal marked restriction of activities of daily living, marked difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence or pace. At her very best times throughout this two-and-a-half year period, Plaintiff was assessed with GAF scores of 55 on some occasions, which would indicate moderate to serious problems in

-11-

these areas. But, Listing 12.04 is not focused on what a person's best times are like. Rather, as long as a person's symptoms reveal at least intermittent problems that are persistent, an individual will meet the listing. Hence, the ALJ must re-examine Listing 12.04.

### VII.  Conclusion

The ALJ's decision is, therefore, **REMANDED** for the purpose of re-evaluating Plaintiff's RFC and addressing Listing 12.04.

**SO ORDERED.**

Dated:  March 27, 2007.

                                                                              _____
                                                                              RICHARD L. YOUNG, JUDGE
                                                                              United States District Court
                                                                              Southern District of Indiana

Electronic copies to:

J. Michael Woods
WOODS & WOODS
mwoods@woodslawyers.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov